# Monier v. Philadelphia Rapid Transit Company, Appellant.

*Street railways—Passenger—Ejection of passenger.*

1. On the trial of an action by a passenger against a street railway company for an alleged wrongful and violent ejectment from a street car, it is reversible error for the court to charge as follows: "If you believe a man was so cruel, so lowbred, brutal and criminal as to do that—that, if justice had been vindicated upon those facts at the time, he would not have been now half through the service of a sentence in the penitentiary or the county jail at the date of this trial—if, as I may say, you believed that and found a verdict accordingly, there would be no limitation to your damages as against the defendant under such circumstances. Resentment would inflict any vindication, but, unfortunately, in a way, the limitations of liability are confined here, in the court's judgment, to that which is done by one of the employees of the defendant, within the scope, as the law puts it, of his authority, within the purpose for which he was hired by the company, and the company cannot be held responsible for the passions of men or for the malicious actions of unreliable characters."

2. The trial judge may express his views on the evidence in a proper and dispassionate manner so long as he leaves the jury entirely free to consider the evidence and determine the facts. He may not, however, by the use of violent and impassioned language discuss the parties, the witnesses, or the evidence in such manner as to prevent a calm and impartial consideration of the case by the jury. A litigant has a right to a trial by a fair and impartial jury whose consideration of his cause is not influenced by any language of the court which would create resentment or prejudice against him.

3. In a case against a street railway company to recover for personal injuries it is improper for the court to refer in its charge to the general character and nationality of the plaintiff, where no question is raised by the pleadings as to character and nationality.

Argued Jan. 12, 1910. Appeal, No. 317, Jan. T., 1909, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1907, No. 5,113, on verdict for plaintiff in case of Emil Monier v. Philadelphia Rapid Transit Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries and for wrongful ejectment from car.

At the trial it appeared that the plaintiff was a passenger on one of defendant's cars on January 23, 1907. He got into an altercation with the conductor and the latter pushed him off in a manner that indicated violence.

The court charged in part as follows:

[If you believe a man was so cruel, so lowbred, brutal and criminal as to do that—that, if justice had been vindicated upon those facts at the time, he would not have been now half through the service of a sentence in the penitentiary or the county jail at the date of this trial—if, as I say, you believed that and found a verdict accordingly, there would be no limitation to your damages as against the defendant under such circumstances. Resentment would inflict any vindication; but, unfortunately, in a way, the limitations of liability are confined here, in the court's judgment, to that which is done by one of the employees of the defendant, within the scope, as the law puts it, of his authority, within the purpose for which he was hired by the company, and the company cannot be held responsible for the passions of men or for the malicious actions of unreliable characters.] [2]

[You must first determine whether or not he was the character of man as has been described by the motorman and conductor and the colored boy, and whether or not he was so acting; or whether or not he was one of a family party of these decent, humble French people you have seen upon the stand, who went out into the woods to spend a summer's day, and that plaintiff might have partaken of the national wine to the extent of a pint of claret with his lunch, according to their custom, which he and the boy shared with each other; and also whether a pint of claret wine would affect a Frenchman with intoxication.] [3]

[It is a serious case; serious to the plaintiff, exceedingly serious, and serious, as well, to the defendant.] [4]

Verdict and judgment for plaintiff for $1,850. Defendant appealed.

*Errors assigned* were (1) that the charge was inadequate; (2–4) above instructions, quoting them.

*Thomas Leaming*, with him *Sydney Young*, for appellant.— The charge was inadequate and its language was prejudicial to defendant: Linn v. Com., 96 Pa. 285; McFadden v. Reynolds, 11 Atl. Repr. 638; Curtin v. Somerset, 140 Pa. 70; Hocker v. Jamison, 2 W. & S. 438; Hayes v. R. R. Co., 195 Pa. 184; Lingle v. Ry. Co., 214 Pa. 500.

*John M. Vanderslice*, with him *Clarence Vanderslice*, for appellee.—Considering the whole charge, appellant has no cause of complaint. ˙ Whether or not the conductor acted within the scope of his authority was left for the jury to determine under fair and impartial directions: Leibig v. Steiner, 94 Pa. 466; Jackson v. Times, 152 Pa. 406; Reynolds v. Braithwaite, 131 Pa. 416.

OPINION BY MR. JUSTICE MESTREZAT, February 21, 1910:

We are compelled to sustain the second and third assignments of error and reverse this judgment. The language of the charge complained of in these assignments would manifestly prejudice the jury against the defendant company. We have condemned language of similar import used by counsel in arguing a case to the jury, and with greater reason it should not be employed by the court in submitting the case to the jury. The trial judge may express his views on the evidence in a proper and dispassionate manner so long as he leaves the jury entirely free to consider the evidence and determine the facts. He may not, however, by the use of violent and impassioned language discuss the parties, the witnesses, or the evidence in such manner as to prevent a calm and impartial consideration of the case by the jury. A litigant has a right to a trial by a fair and impartial jury whose consideration of his cause is not influenced by any language of the court which would create resentment or prejudice against him.

With this standard as our guide, it will be seen that the appellant has just cause to complain of the language used in sub-

mitting this case to the jury. The action was trespass by the plaintiff, a passenger on one of defendant's cars, to recover damages resulting from "the rude and unwarranted action of the conductor" in pushing the plaintiff from the car. With the merits of the case we have no concern on this appeal. The testimony of the plaintiff tended to place the conductor in an unenviable light and to show that his treatment of the plaintiff was wholly indefensible. The defendant's evidence justified the conductor's behavior on the occasion. In view of the issue and the evidence adduced to sustain it, it was therefore important, in order to secure a fair and unbiased consideration by the jury, that the court, in its charge, should review the case in a calm and dispassionate manner. The language used in the charge cannot be so characterized. The epithets applied by the court to the defendant's conductor painted him as a degenerate for whose punishment the law scarcely made adequate provision. Conceding the conductor's treatment of the plaintiff to be inexcusable and properly censurable, the jury, to enable it to dispassionately consider the evidence, did not need to be told that a man guilty of such conduct was cruel, lowbred, brutal and criminal, and "that if justice had been vindicated upon those facts at the time, he would not have been now half through the service of a sentence in the penitentiary or the county jail at the date of this trial." Nor did it assist the jury in fixing the amount of damages, the court having told them that compensation and not punishment was the measure, for the learned judge to charge that if there was a verdict for the plaintiff, "there would be no limitation to your damages as against the defendant under such circumstances." Neither can it be asserted with absolute confidence that sympathy for the plaintiff and resentment against the defendant company were entirely driven from the minds of the jurors by being told by the learned judge that the company was not responsible "for the malicious actions of unreliable characters." All the language quoted above is to be found in one paragraph of the printed charge, and there is nothing in the context or other parts of the charge which relieves it from the manifest effect to blacken the character of the conductor

and prejudice the jury against the defendant company. The attempt of the learned judge, after counsel had excepted to his intemperate language, to "eliminate all consideration of that from your deliberations" would not be effective in excluding it from the minds of the jurors. It had gained a lodgement there, and could not be eradicated by a simple suggestion after the charge.

The language embraced in the third assignment is also objectionable and was not pertinent to the issue raised by the pleadings. The plaintiff's right to recover did not depend on his general character or his nationality, but on his ability to sustain by competent evidence the averments of his statement which raises no issue as to either his character or his nationality. This part of the charge directed the jury to consider and determine questions not in the case, and tended to arouse sympathy on behalf of the plaintiff.

The judgment is reversed with a new venire.