78 So.2d 273

Frances SYKES

v.

Pearl SYKES.

6 Div. 393.

Supreme Court of Alabama.

Dec. 16, 1954.

Rehearing Denied March 10, 1955.

Silberman & Silberman, Birmingham, for appellant.

Earl McBee, Birmingham, for appellee.

GOODWYN, Justice.

Bill in equity by Pearl Sykes to have a resulting trust in real property decreed in her favor, or, in the conditional alternative, to have a lien in her favor fixed on said property for moneys expended by her for the benefit and protection of the property. This appeal is by Frances Sykes, one of the respondents, from a decree overruling her demurrer to the bill.

In substance, the bill alleges the following: On March 29, 1938, a quit-claim deed was executed by R. M. Kimbrough and wife conveying legal title to certain real property in Jefferson County to Wilmar Sykes, one of the respondents, for a consideration of $100 paid by complainant, appellee here; that it was not until several years thereafter that Wilmar Sykes learned that legal title had been taken in his name; that complainant is the equitable owner of said real estate by virtue of an implied trust, since

she paid the entire purchase price for said property; that Wilmar Sykes has always recognized her as such owner even though legal title was taken in his name; that this was done "in the erroneous belief that complainant was barred from taking title in her own name because she had been administratrix of the estate of Taylor Holmes, deceased, from which estate the said R. M. Kimbrough received title to said real estate"; that complainant took possession of said property under said deed and has always dealt with it as her own; that since the execution of said deed, said property has been assessed in the name of Wilmar Sykes but that complainant has paid all taxes thereon; that during January, 1940, the house on said property was repaired and improved and in order to pay for these expenditures the sum of $450 was borrowed in the name of Wilmar Sykes and said loan secured by a lien on said property which is now held by the Federal Housing Administration; that complainant has paid all payments made on this loan, the most recent being $5 made on August 13, 1951; that the balance now owing on said loan is $208.53; that she is ready, willing and able to pay this balance if the relief sought here is granted; that on August 20, 1949, said deed was reformed in a cause which originated in the circuit court on the law side wherein Wilmar Sykes and another were sued in ejectment and the cause was transferred to equity on motion by the defendants therein; that said decree of reformation refers to and makes a part thereof a photostatic copy of a map dated November 1941, prepared by Walter Schoel, civil engineer, on which Pearl Sykes, complainant, is shown as the owner of the property; that in connection with said reformation suit complainant expended $218.25 for attorneys' fees, court costs, and the survey by Walter Schoel; that on April 26, 1951, a final decree of divorce was rendered in favor of Frances Sykes, one of the respondents and appellant here, in the circuit court of Jefferson County, wherein the said Frances Sykes was respondent and cross-complainant and Wilmar Sykes was complainant and cross-respondent; that as a part of the said decree the said Frances Sykes was awarded whatever interest Wilmar Sykes had in the real estate here involved; that Wilmar Sykes was ordered to execute necessary instruments conveying, releasing and granting to Frances Sykes all his right, title or interest to said real estate and on his failure to do so the Register was authorized and directed to execute proper instruments in order to complete the conveyance to Frances Sykes; that said decree further provided as follows: "Sixth: That the aforementioned real and personal property be awarded to the Respondent, Cross-complainant, subject to all mortgages, liens, or encumbrances existing thereon"; that a year or two prior to said divorce decree complainant permitted Wilmar Sykes to live on said property on the agreement that he would make the payments on the above mentioned F.H.A. indebtedness in lieu of paying rent to complainant; that Wilmar Sykes did not perform his agreement and did not make any payments on the said indebtedness; that Frances Sykes had notice of complainant's ownership of said real estate prior to the time that Frances Sykes filed her cross-bill in the divorce suit and that, therefore, the said Frances Sykes was not a purchaser for value without notice.

The principal questions presented on this appeal are (1) whether the allegations of the bill are sufficient on demurrer to establish a resulting trust in favor of the complainant or, in the conditional alternative, to establish a lien in her favor for moneys expended by her for the benefit and protection of the property; (2) whether the bill shows on its face that the cause is barred by the statute of limitations or laches; and (3) whether Frances Sykes is a bona fide purchaser of the property for value and without notice.

### Resulting Trust.

We have held that "where there is a transfer of property to one person and the purchase price is paid by another, a resulting trust arises by operation of law in favor of the person by whom the purchase price was paid, in the absence of circumstances rebutting such operation of law. Haney v. Legg, 129 Ala. 619, 30 So. 34, 87

Am.St.Rep. 81; Miles v. Rhodes, 222 Ala. 208, 131 So. 633; De Freese v. Vanderford, 220 Ala. 360, 361, 125 So. 228." Jacksonville Public Service Corp. v. Profile Cotton Mills, 236 Ala. 4, 7, 180 So. 583, 585. See, also, Adams v. Griffin, 253 Ala. 371, 373, 45 So.2d 22; Young v. Greer, 250 Ala. 641, 643, 35 So.2d 619; Lauderdale v. Peace Baptist Church of Birmingham, 246 Ala. 178, 180, 19 So.2d 538. And we have said that "a resulting trust is a creature of equity, based on the presumption that he who furnishes the consideration for the purchase of lands intends the purchase for his own benefit. Miles v. Rhodes, 222 Ala. 208, 131 So. 633." Leonard v. Duncan, 245 Ala. 320, 322, 16 So.2d 879, 881.

■ It is true that where a husband or parent pays the purchase price for land and causes title thereto to be taken in the name of his wife or child, the presumption of intention to become the owner of the property arising from the payment of the purchase money is rebutted by the stronger counter presumption of an intention to make an advancement or gift to the wife or child. Johnson v. Johnson, 259 Ala. 550, 552, 67 So.2d 841; Swendick v. Swendick, 221 Ala. 337, 338, 339, 128 So. 593; Long v. King, 117 Ala. 423, 430, 431, 23 So. 534; Hatton v. Landman, 28 Ala. 127, 135. "When, therefore, such relationship between the parties is shown by the averments of the bill, the presumption arising therefrom must be clearly rebutted by appropriate allegations." Long v. King, supra [117 Ala. 423, 23 So. 536]. See, also, Swendick v. Swendick, supra.

■ The present bill avers that complainant paid the purchase price and had title placed in Wilmar Sykes, thus raising the presumption that the purchase was intended for complainant's own benefit. Leonard v. Duncan, supra. We do not find in the bill any showing of a relationship between complainant and Wilmar Sykes as would raise the stronger counter presumption of an intention to make a gift or advancement.

### Complainant's Right to a Lien.

As to this aspect of the bill, appellant contends that it is without equity; that complainant, in making the alleged payments, was but a mere volunteer and, therefore, such payments were made at her own risk.

■ "The law is settled that a mere volunteer, who without any duty, moral or otherwise, pays the debt of another, cannot establish an equity in the property relieved by such payment. 25 R.C.L. 1324, § 11." Barnes v. Powell, 241 Ala. 409, 412, 3 So. 2d 80, 82. But, in Carter v. Carter, 251 Ala. 598, 600, 38 So.2d 557, we approved the following pronouncement from 9 Thompson on Real Property, Rev.Ed., § 5053, pp. 513, 514:

"One who has paid a debt under a colorable obligation to do so, in order that he may protect his own interest, or under an honest belief that he is bound, is entitled to be subrogated; and where one pays a debt in good faith believing that he has an interest to protect, he will be subrogated although he be mistaken in such belief."

In an analogous situation, where improvements were made by one in good faith and under the mistaken belief that she was owner of the property, this court, in Lee v. Menefield, 249 Ala. 407, 411, 31 So.2d 581, 585, said:

"Under such circumstances equity will impress the property with a lien for the amount of the expenditures so made on the principle that 'where a person makes improvements upon property of another or otherwise increases its value, being induced by fraud, duress, undue influence, or mistake of such a character that he is entitled to restitution, he is entitled to an equitable lien upon the property.' Restatement, Restitution, p. 689, § 170, p. 640, § 160."

■ The averments of the complaint clearly indicate that complainant paid out moneys for the benefit and protection of the real estate in the belief that she was the equitable owner of the property and,

therefore, had an interest to protect. The contention that the bill shows her to be a mere volunteer is without merit.

### Statute of Limitations and Laches.

Appellant contends that if complainant ever had any rights in the property such rights are now barred by the statute of limitations of ten years, Code 1940, Tit. 7, § 20, or laches.

■ "It is the settled rule of practice in this state that a demurrer will lie for laches, as well as for statutory limitations appearing on the face of the bill. Greenlees v. Greenlees, 62 Ala. 330; Scruggs v. Decatur Mineral & Land Co., 86 Ala. 173, 5 So. 440." Fowler v. Alabama Iron & Steel Co., 164 Ala. 414, 419, 51 So. 393, 395; Smith v. Hart, 259 Ala. 7, 9, 65 So.2d 501.

■■ It is also well settled by the decisions of this court that an action for establishment of a resulting trust is subject to the statute of limitations of ten years, supra, as being "in the nature of a suit for the recovery of land since land is the subject matter of the suit". Woods v. Sanders, 247 Ala. 492, 495, 25 So.2d 141, 143; Miles v. Rhodes, 222 Ala. 208, 209, 131 So. 633. But the statute does not begin to run in such a case so long as there is a recognition of the trust by the trustee; that is, it begins to run at the time of the last recognition of the trust by the trustee. As thus stated in Jacksonville Public Service Corp. v. Profile Cotton Mills, supra:

"The statute of limitations does not begin to run against a resulting trust so long as there is a recognition of such trust by the trustees. * * * That is to say that each recognition of the trust affords a new beginning of time and each case stands upon the facts and circumstances affecting such question. * * *."

According to the bill, Wilmar Sykes has always recognized the equitable ownership of complainant. It is averred that as recent as "a year or two" prior to the rendition of the divorce decree under which Frances Sykes was awarded Wilmar Sykes' interest in the property, Wilmar Sykes recognized complainant's ownership, it being averred that he assumed possession of the property under an agreement to make payments on the F.H.A. indebtedness in lieu of paying rent to complainant. The only facts appearing on the face of the complaint indicating a claim of ownership adverse to complainant is that Frances Sykes is in possession of the property under claim of ownership by virtue of the decree rendered in her divorce proceedings.

With regard to laches, we quote the following from Hauser v. Foley & Co., 190 Ala. 437, 440, 67 So. 252, 253:

" 'The true doctrine concerning laches has never been more concisely and accurately stated than in the following language of an able living judge: "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." Stiness, J., in Chase v. Chase, 20 R.I. 202, 37 A. 804.' 5 Pom.Eq.Jur., § 21.

" 'Laches, as has been well said, does not, like limitation, grow out of the mere passage of time, but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relation of the property, or the parties.—Galliher v. Cadwell, 145 U.S. 368 [12 S.Ct. 873, 36

L.Ed. 738].' First Nat. Bank v. Nelson, 106 Ala. 535, 18 So. 154." See, also, Wise v. Helms, 252 Ala. 227, 230, 40 So.2d 700; Meeks v. Meeks, 251 Ala. 435, 437, 37 So.2d 914; Fanning v. Fanning, 210 Ala. 575, 576, 98 So. 804.

Our view is that the bill does not show on its face that the action is barred either by the statute of limitations or laches. Accordingly, error was not committed in overruling the demurrer addressed to those aspects of the bill.

Frances Sykes as Bona Fide Purchaser.

Appellant takes the position that when the property was deeded to her pursuant to the divorce decree she thereupon became a bona fide purchaser of the property, without notice of any claim by appellee; that this is shown on the face of the bill and, therefore, the demurrer taking the point should have been sustained. Our conclusion is that there was no error in overruling the demurrer on this point.

It appears from the allegations of the bill that the decree awarding the property to appellant specifically provided that the award was "subject to all mortgages, liens, or encumbrances existing thereon". The effect of this, it seems to us, was to transfer to her all of the right, title and interest which Wilmar Sykes had in the property at the time the decree was rendered. Cox v. Cox, 260 Ala. 524, 71 So.2d 275, 277; Frazier v. Espalla, 220 Ala. 446, 448, 125 So. 611. This means that appellant holds title to the property by what is tantamount to a quitclaim deed. In Mallory v. Agee, 226 Ala. 596, 600, 147 So. 881, 883, 88 A.L.R. 1107, it was held as follows:

"In order that a purchaser of land shall be protected against equities of third persons, he must have acquired at the time of such purchase the legal title by warranty deed. Smith v. Owenton-Ensley Highlands Land Co., 219 Ala. 422, 122 So. 663; Shorter v. Frazer, 64 Ala. 74, 81; Warren v. Liddell, supra, page 247 of 110 Ala., 20 So. 89; Wood v. Holly [Mfg. Co.], 100 Ala. 326, 351, 352, 13 So. 948, 46 Am.St.Rep. 56; Marsh v. Elba Bank & Trust Co., 221 Ala. 683, 130 So. 323; Gordon v. Ward, 221 Ala. 173, 128 So. 217; McCollum v. Burton, 220 Ala. 629, 127 So. 224; Marsh v. Marsh, 215 Ala. 571, 112 So. 189 * * *."

We do not think the bill shows on its face that appellant is a bona fide purchaser without notice.

A further contention by appellant is that the bill should not be entertained for the reason that complainant does not offer to do equity.

"The general rule is that he who seeks equity must do equity, and that his bill must so offer. This rule has been held not to apply when the bill shows that complainant is not required to do anything in good conscience as a condition to the granting of relief. Head v. Carroll, 230 Ala. 688, 163 So. 328; Davis v. Anderson, 218 Ala. 557, 119 So. 670." Young v. Dean, 253 Ala. 211, 215, 44 So.2d 12, 16.

This bill does not disclose that there is anything in particular which the complainant should offer to do as a condition to the relief which she seeks.

For the reasons hereinbefore stated the decree of the trial court overruling appellant's demurrer to the bill, and to each of its aspects, is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.